IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

MARSHA SUBER,                        *
                                     *
    Plaintiff,                       *
                                     *
v.                                   *    CIVIL ACTION NO.
                                     *
CANCER TREATMENT CENTERS OF          *
AMERICA GLOBAL, INC.,                *
GYASI CHISLEY, and JONATHAN          *
WATKINS,                             *
                                     *    **JURY TRIAL DEMAND**
    Defendants.                      *

**COMPLAINT**

Comes Now, Plaintiff, Marsha Suber, and files her Complaint against the above-named Defendants on the following grounds:

**INTRODUCTION**

1.

This is an action for race discrimination pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.  In addition, this is an action for violations of the Equal Pay Act ("EPA"), codified at 29 U.S.C. § 206(d) et seq. ("EPA").

**JURISDICTION**

2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 over the Plaintiff's claims.

3.

Defendant Cancer Treatment Centers of America Global, Inc., ("CTCA") is a Florida corporation doing business in the Newnan Division of the Northern District of the State of Georgia with its principal offices located at 600 Celebrate Life Parkway, Newnan, Coweta County, Georgia 30263.

4.

Defendant Gyasi Chisley is the National President and Chief Executive Officer of Hospitals & Clinics for CTCA ("CEO"), and routinely conducts business at 600 Celebrate Life Parkway, Newnan, Coweta County, Georgia 30263.

5.

Defendant Jonathan Watkins is the Regional President for CTCA ("Regional President"), with his office located at 600 Celebrate Life Parkway, Newnan, Coweta County, Georgia 30263.

6.

Defendants are an "employer" as defined by 29 U.S.C. § 203(d).

7.

Defendants are subject to the jurisdiction of this Court.

**VENUE**

8.

Defendant CTCA resides within the Newnan Division of the Northern District of Georgia and operates its business within the Newnan Division of the Northern District of Georgia.

9.

All actions alleged herein occurred within the Newnan Division of the Northern District of Georgia.

10.

Venue in this district is proper for the Defendants pursuant to 28 U.S.C. § 1391(b) & (c).

**THE PARTIES**

11.

The Plaintiff is a Caucasian female, formerly employed by Defendant CTCA, who resides in Coweta County, Georgia.

12.

Defendant CTCA has failed to register its business with the Georgia Secretary of State's Office, and, therefore, does not have a registered agent for service of process in the State of Georgia.

13.

Defendant CTCA may be served with summons and process pursuant to Rule 4(h)(1) and 4(e)(1) of the Federal Rules of Civil Procedure and O.C.G.A. §14-2-1510(b) by delivering a copy of the summons and

-3-

complaint by overnight delivery to Pat Basu, President and Chief Executive Officer, 5900 Broken Sound Parkway, N.W., Boca Raton, Florida 33487, and upon the Georgia Secretary of State.

14.

Defendant Chisley may be served with summons and process pursuant to O.C.G.A. §9-10-91 by delivering a copy of the summons and complaint to him at 2610 Sheridan Way, Zion, Illinois 60099.

15.

Defendant Watkins may be served with summons and process by delivering a copy of the summons and complaint to him at 600 Celebrate Life Parkway, Newnan, Coweta County, Georgia 30263.

**FACTS**

16.

Defendant CTCA operates its cancer treatment centers throughout the United States of America, including within the State of Georgia.

17.

In approximately June of 2012, the Plaintiff began her employment in the position of Manager of Inpatient Services.

18.

In approximately June of 2013, the Plaintiff was promoted to the position of Director of Inpatient Services.

-4-

19.

From approximately November 2014 until January 2020, the Plaintiff was promoted five (5) times based on her performance.

20.

In approximately November of 2014, the Plaintiff was promoted to the position of Director of Quality and Risk Management.

21.

In approximately June of 2016, the Plaintiff was promoted to the position of Assistant Vice President for Patient Care Services.

22.

In approximately June of 2017, the Plaintiff was promoted to the position of Assistant Vice President for Oncology Patient Services.

23.

During her employment, the Plaintiff was told by former COO, David Kent (Caucasian/male), and former COO, Scott Walker (Caucasian/male), that she was being groomed for COO as part of the company's succession plan.

24.

In approximately November of 2018, the Plaintiff was promoted to Vice President Oncology Services – Chief Nursing Officer ("CNO").

25.

In approximately January of 2020, the Plaintiff was promoted to Interim Chief Operating Officer ("COO"), while continuing to serve as the CNO.

26.

In her position as CNO and COO/CNO, the Plaintiff was responsible for all oncology clinical operations.

27.

In approximately May of 2019, Defendant Chisley (African-American/male) became CEO.

28.

In approximately October of 2019, Defendant CCTA and Defendant Chisley demoted Kent from his position as CEO of the Atlanta location.

29.

In approximately October of 2019, Defendant CCTA and Defendant Chisley terminated Nancy Hesse (Caucasian) from her position as CEO of the Philadelphia location.

30.

In approximately October of 2019, Defendant CCTA and Defendant Chisley hired Defendant Watkins (African-American/male) as Regional President over the Atlanta and Philadelphia locations.

31.

In her position as COO/CNO, the Plaintiff reported to Defendant Watkins (African-American/male).

32.

In her position as COO/CNO, the Plaintiff satisfactorily performed her duties.

33.

In early May of 2020, Defendant Watkins told the Plaintiff she was doing a good job in her role and to keep up the good work.

34.

While serving as COO/CNO, Defendant Watkins made it clear to the Plaintiff that he would not hire her for the permanent position of COO, and for her to continue what she was doing until he hired a new COO.

35.

In June 2020, Defendant CTCA posted the COO position.

36.

In July of 2020, Anna Simelane, Vice President of Talent, told the Plaintiff it would be a waste of time for her to apply for the COO position because Defendant Watkins would not hire her.

37.

In July of 2020, Defendants interviewed three (3) candidates for the COO position, all of whom are African-American.

38.

In July of 2020, Defendants hired John Baldwin, a twenty-nine (29) year old African-American male, for the COO position.

39.

In July of 2020, the Plaintiff was informed that she would not perform the COO duties and that all of her duties managing the outpatient clinical programs would be removed from her supervision and assigned to Baldwin.

40.

The Plaintiff has thirty-seven (37) years in the medical profession, including executive management experience.

41.

The Plaintiff possesses equal or higher experience than Baldwin for the COO position.

42.

The Defendants paid the Plaintiff less than Baldwin for performing similar duties to the duties performed by the Plaintiff.

43.

The Defendants paid the Plaintiff less than the Walker (male), for performing similar duties to the duties performed by the Plaintiff.

44.

The Plaintiff possesses equal or higher qualifications than Walker for the COO position.

45.

The Defendants paid the Plaintiff less than the former COO, David Kent (male), for performing similar duties to the duties performed by the Plaintiff.

46.

The Plaintiff possesses equal or higher qualifications than Kent for the COO position.

47.

Defendants' actions caused the Plaintiff an extreme loss of prestige by removing her from the Interim COO position, denying her the COO position, and removing a substantial portion of her duties.

48.

On August 14, 2020, the Plaintiff resigned because she could not return to work in the intolerable working conditions created by Defendants, including, but not limited to, the demoted position, the lack of any meaningful duties, the humility and embarrassment of being removed as Interim COO, and having the outpatient clinical programs removed from her supervision.

49.

The intolerable working conditions created by Defendants were intended to force the Plaintiff to resign.

50.

The Plaintiff was constructively discharged.

51.

Defendants have engaged in violations of the EPA.

52.

Defendants are engaging in a pattern of illegal discrimination by replacing Caucasian employees with African-American employees.

53.

Defendants previously removed David Kent (Caucasian), former Chief Executive Officer, who was replaced by Defendant Watkins.

54.

Defendants have engaged in illegal discrimination against the Plaintiff because of her race.

**COUNT ONE:  42 U.S.C. § 1981 – RACE DISCRIMINATION**

55.

Plaintiff incorporates herein paragraphs 1 through 54 of her Complaint.

-10-

56.

Defendants have engaged in intentional race discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, pay, benefits, promotions, demotions, and her constructive discharge.

57.

Defendants' conduct violates 42 U.S.C. § 1981.

58.

Defendants' discriminatory conduct, in violation of 42 U.S.C. § 1981, has caused the Plaintiff to suffer a loss of pay, benefits, and prestige.

59.

Defendants' actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

60.

Defendants have engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

**COUNT TWO:  EQUAL PAY ACT**

61.

Plaintiff incorporates herein paragraphs 1 through 60 of her Complaint.

-11-

62.

The Plaintiff served as Interim COO and performed all the duties of a COO.

63.

The Plaintiff performed job duties that require equal skill, effort, and responsibility, and which are performed under similar working conditions as the job duties performed by the current and former COOs.

64.

While serving as COO, the Plaintiff was paid at a lower salary than male employee(s) performing similar duties under similar working conditions.

65.

Defendants' action in paying employees of the opposite sex different wages for jobs requiring equal skill, effort, and responsibility violates the EPA.

66.

Defendants have not acted in good faith and on reasonable grounds for believing that its actions and/or omissions were not a violation of the EPA, as defined by 29 U.S.C. § 260.

67.

The Plaintiff is entitled to damages pursuant to the EPA, including liquidated damages pursuant to 29 U.S.C § 260.

-12-

**PRAYER FOR RELIEF**

68.

Wherefore, Plaintiff prays for a judgment as follows:

1. That the Court order Defendants to reinstate her employment;

2. That the Court grant full front pay to the Plaintiff;

3. That the Court grant full back pay to the Plaintiff;

4. That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

5. That the Court grant Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

6. That the Court grant Plaintiff all employment benefits she would have enjoyed had she not been discriminated against;

7. That the Court grant Plaintiff liquidated damages and interest under the EPA;

8. That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees, pursuant to the EPA, and/or 42 U.S.C. § 1988;

9. That the Court grant Plaintiff a jury trial;

10. That the Court grant Plaintiff all other relief the Court deems just and proper; and

-13-

11. That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in further discriminatory conduct.

Respectfully submitted this 7th day of January 2021.

**THE REDDY LAW FIRM, P.C.**

/s/K. Prabhaker Reddy

K. PRABHAKER REDDY
Attorney for Plaintiff
Georgia Bar No. 597320
1325 Satellite Boulevard
Suite 1506
Suwanee, Georgia 30024
Telephone: (678) 629-3246
Facsimile: (678) 629-3247
Email: kpr@reddylaw.net

-14-